UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID KING,

                    Plaintiff,

        – against –

NEW YORK CITY EMPLOYEES
RETIREMENT SYSTEM (NYCERS),

                    Defendant.

**AMENDED
MEMORANDUM, ORDER
& JUDGMENT**

13-CV-4730

**Parties**

David King

New York City Employees Retirement
System (NYCERS)

**Appearances**

John W. Hermina
Hermina Law Group
8327 Cherry Lane
Laurel, MD 20707
(301) 206-3166
law@herminalaw.com

Teresita V Magsino
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-2216
tmagsino@law.nyc.gov

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.    Introduction ................................................................................................ 3
II.    Plaintiff's Work History ............................................................................ 6
III.   Context: Public Pensions ........................................................................ 6
    A. Background .......................................................................................... 6
    B. Protections Afforded .......................................................................... 7
        1. Contractually Protected under State Law ................................ 7
        2. Constitutionally Protected under State Law ............................ 7
        3. Constitutionally Protected under Federal Law ........................ 8
IV.  New York City's Pension Scheme ........................................................... 8
V.    Pension History of Plaintiff ..................................................................... 16
    A. Tier 1 Status: 1971–1977 ................................................................. 16
    B. Tier 4 Status: 1984–2000 ................................................................. 16
    C. Application for Reinstatement to Tier 1 Status ................................. 17
    D. Denial of Tier 1 Reinstatement Application ..................................... 25
    E. Tier 4 Pension Benefit Payments ...................................................... 28
VI.  Procedural History .................................................................................. 29
    A. State Claim ........................................................................................ 29
    B. Federal Claim .................................................................................... 30
    C. Appeal and Remand .......................................................................... 31
VII. Motion to Dismiss ................................................................................... 33
    A. Standard ............................................................................................ 33
    B. Consideration of Matters Extraneous to Complaint .......................... 34
VIII. Due Process ............................................................................................ 34
    A. Law .................................................................................................... 34
        1. Equitable Tolling and Equitable Estoppel .............................. 35
        2. Procedural Due Process Claim ................................................ 38
        3. Substantive Due Process Claim ............................................... 41
    B. Application ......................................................................................... 43
        1. Equitable Tolling and Equitable Estoppel .............................. 43
        2. Procedural Due Process Claim ................................................ 45
        3. Substantive Due Process Claim ............................................... 45
IX.  Breach of Contract .................................................................................. 46
    A. Law .................................................................................................... 46
    B. Application ......................................................................................... 48
X.    New York General Business Law Section 349 ......................................... 50
    A. Law .................................................................................................... 50
    B. Application ......................................................................................... 53
XI.  Conclusion ............................................................................................... 53

## I.  Introduction

The decision by the Court of Appeals for the Second Circuit in this case, requiring the district court to hear a litigation brought by a retiree to an adverse City of New York pension decision—after relevant issues had been raised and rejected in a New York article 78 proceeding—incorporates an undesirable practice.  *See King v. NYCERS*, 595 F. App'x 10 (2d Cir. 2014) (summary order).  New York should consider how such cases ought to be processed within the state, modifying, as necessary, state substantive law and procedure to avoid appeals to federal courts from New York City Employees' Retirement System ("NYCERS") decisions respecting city pensions.

What is required is a single state cause of action challenging—at the same time—the accuracy of the administrative decision denying a pension claim, a possible due process claim, a possible breach of contract claim, and any other objection.  The gravamen, based on one factual-legal dispute, is the same in all such causes of action.  The issues should be adjudicated, where practicable, administratively before a final adverse decision is made by NYCERS.

The opportunity that the plaintiff had to challenge the denial of his pension claim was arguably fully treated in his article 78 state proceeding.  *See infra* Part VI.A; Order of the Supreme Court of the State of New York County of Kings, Jan. 23, 2012, ECF No. 1-3 at 9–11 ("It is no moment that petitioner maintains in his petition that NYCERS breached its contract with him, violated certain fiduciary duties and committed fraud.  The Court has considered petitioner's remaining arguments and find[s] them to be without merit.").  Plaintiff failed to appeal from the adverse State Supreme Court decision.  That should have been the end of the litigation.  Nevertheless, plaintiff instituted a separate federal constitutional claim in this court based on the same factual-legal dispute which had been before the article 78 Supreme Court Justice.  His claim was dismissed in this court because all of his claims had previously

apparently been considered and denied by a State Supreme Court Justice. *See* Hr'g Tr. 15:14–17, Nov. 25, 2013 ("[This federal district court is] barred from reviewing the Article 78 judge's decision. You should have appealed that [decision] in the state court. [This court is] not a reviewing court [for] state actions. [It's] an entirely different court system.") The view of the Court of Appeals for the Second Circuit on remand that there was a federal constitutional independent claim distinct from plaintiff's article 78 claim has revealed an unsatisfactory procedural difficulty in allowing repetitive claims. *See infra* Part VI.C; *King*, 595 F. App'x at 11–12.

A second kick down the road at the city administrative error should not be afforded in any efficient modern procedural system—even though there is logic to the federal appellate ruling based on the limitations of the state article 78 proceeding (homogenizing the limited scope of medieval British writs of review). There is a single factual-legal dispute over a claim for an increased pension that should be disposed of in one litigation, in one state court, by one state judge, *on the merits*. The short four-month statute of limitations, which plaintiff faced in the article 78 proceeding, exacerbates the procedural-substantive problem.

The law of New York City on retirement benefits is arcane. Benefits constantly shift as a result of negotiations for wages and collateral benefits. Pension rights are one of the negotiating vectors. New employees' wages and other benefits are balanced against those of the older workers who are looking forward to higher pensions as opposed to higher wages. The amounts involved are enormous. New York City projects that it will pay direct dollar pensions of $8.582 billion in fiscal year 2015, plus other benefits, such as medical costs. *See* Office of the New York City Comptroller, Bureau of Fiscal and Budget Studies, *Comments on New York City's Preliminary Budget for Fiscal Year 2016 and Financial Plan for Fiscal Years 2015–2019* at 1

(2015), http://comptroller.nyc.gov/wp-content/uploads/documents/3-4-15_CommentsPreliminary

Budget.pdf (last visited July 30, 2015).  Wherever possible and practicable, individual pension

decisions should be made by state administrative bodies and state courts without intervention by

a federal court.

Plaintiff, David King, a former employee of New York City, claims that he is being

cheated out of a portion of his city pension.  Defendant, NYCERS, maintains that current

payments are proper.

The Court of Appeals for the Second Circuit, in its remand reversing the trial court's

dismissal of the complaint, indicated that "the district court may wish to consider a number of

[bases for dismissal]"; they include *res judicata*, statute of limitations, and due process.  *King*,

595 F. App'x at 11–12.  This suggestion has been followed.

The precise question posed:  Is plaintiff's "retirement" status dictated by the date on

which he was entitled to start receiving pension benefits (*i.e.*, his "payability date") under Tier 4

(*see infra* Part V (facts) *and* Part IV (discussing Tier 4 pension scheme)), *or* by the date on

which he applied for Tier 1 reinstatement (*see infra* Part V (facts) *and* Part IV (discussing tier

reinstatement))?  The court finds—as detailed below—that plaintiff's "retirement" status is

governed by the date on which he filed for reinstatement, so he is entitled to higher Tier 1

benefits retroactively.  "Payability date" is not synonymous with "retirement date."

Plaintiff has stated a valid claim.  Defenses of *res judicata* and statute of limitations do

not apply.  Supplementary jurisdiction will be exercised over the state breach of contract claim.

*See* 28 U.S.C § 1367.  All other claims are dismissed.

The letter of August 5, 2015 from NYCERS, providing "NYCERS's publications on Vesting for Tier 4 members," does not affect the holding of this memorandum. *See* Letter from Teresita V. Magsino, Aug. 5, 2015.

## II. Plaintiff's Work History

The history of plaintiff's work for the city is, in brief: he worked for New York City's Environmental Protection Administration from 1971 to 1977; in 1984, he became a "bridge and tunnel officer" for the New York Triborough Transit and Tunnel Authority ("TBTA"); and he left voluntarily in 2000. The details of his pension journey are set forth in *infra* Parts V and VI. His age and work history complied with all pension requirements as claimed by plaintiff.

## III. Context: Public Pensions

### A. Background

In the United States, public sector pensions are offered at federal, state and local levels of government. A government pension plan is defined as "a savings device wherein government agencies (and sometimes their employees as well) make regular contributions during their employees' careers." Lowell R. Ricketts, *State Pension Plans in Peril: The Need for Reform*, Liber8 Economic Information Newsletter (2010), https://research.stlouisfed.org/ pageone-economics/uploads/newsletter/2010/201009.pdf (last visited July 30, 2015). "The collective savings for all employees in a plan are invested in interest-bearing securities." *Id.*

"Typically, retirees collect a predetermined monthly payment based on length of service and average wage toward the end of their careers." *Id.* A funding gap, however, "develops if contributions to the plan plus investment earnings are less than the current and future benefits promised to retirees." *Id.*

Federal court intervention in expensive and complicated state and city pension plans— under severe fiscal and political pressure—should be avoided.

## B. Protections Afforded

### 1. Contractually Protected under State Law

Forty-one states, including New York, protect pensions under contract theory. *See* Liz Farmer, *How are Pension Protected State-by-State* (Jan. 28, 2014), http://www.governing.com/finance101/gov-pension-protections-state-by-state.html (last visited July 30, 2015); *see infra* Part IX.A (discussing breach of contract theory in New York with respect to pension entitlements). Legislators are prohibited from passing laws that impair pension contracts previously entered into, whether public or private. *See* Farmer, *supra*. The protections provided pursuant to contract theory vary by state. *Compare, e.g.*, *Protect Our Benefits v. City and Cnty. of San Francisco*, 235 Cal. App. 4th 619, 628 (2015) ("'A public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment.'" (citation omitted)), *with infra* Part IV (explaining that, under New York law, pension rights are protected under the state constitution as a contractual relationship that vests in employees by the terms of the applicable statutory scheme).

### 2. Constitutionally Protected under State Law

Seven states, including New York, have a constitutional provision that specifically states that public pension plans create a contract between the state and participant employees. *See* Farmer, *supra*; *see also, e.g.*, N.Y. Const. art. V, § 7 ("[M]embership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."); Mich. Const. art. IX, § 24 ("The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."); Ill. Const. art. XIII, § 5 ("Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof,

shall be an enforceable contractual relationship, the benefits of which shall not be diminished or

impaired.").

### 3. Constitutionally Protected under Federal Law

Six states, including New York, take the approach that pensions are protected as a

property right under the due process clause of the United States Constitution. *See* Farmer, *supra*;

*see also, e.g.*, *Morris v. NYCERS*, 129 F. Supp. 2d 599, 606–07 (S.D.N.Y. 2001) (holding former

city employee had property interest in right to receive benefits of his membership in city pension

system subject to the due process clause (collecting cases)); *Myers v. W. Virginia Consol. Pub.*

*Ret. Bd.*, 704 S.E.2d 738, 747 (2010) (citations omitted) ("[T]he realization and protection of

public employees' pension property rights is a constitutional obligation. The State cannot divest

the plan participants of their rights except by due process[.]"); *Hill v. State Employees Ret.*

*Comm'n*, 851 A.2d 320, 328 (2004) ("It is undisputed that, if he complies with the governing

statutory conditions, he has a constitutionally protected property right to a pension benefit."

(citing *Pineman v. Oechslin*, 488 A.2d 803 (1985)), *cert. denied* 859 A.2d 561 (2004).

## IV. New York City's Pension Scheme

Section 7 of article V of the Constitution of the State of New York provides:

> After July [1, 1940], membership in any pension or retirement
> system of the state or of a civil division thereof shall be a
> contractual relationship, the benefits of which shall not be
> diminished or impaired.

N.Y. Const. art. V, § 7.

The City of New York provides benefits to retirees under five pension programs:

(1) New York City Board of Education Retirement System; (2) New York City Fire Department

Pension Fund; (3) New York City Police Pension Fund; (4) New York City Teachers'

Retirement System; and (5) NYCERS. *See* Office of Payroll Administration, *Pension Plans*,

http://www.nyc.gov/html/opa/html/tax_breaks/pension_plans.shtml (last visited July 30, 2015). This case involves NYCERS, the largest of the five pension systems within the city. *Id.*

Membership in NYCERS is broken down into five distinct tiers. *See* NYCERS, Comprehensive Annual Financial Report 13 (2014), https://www.nycers.org/ (S(q1yo0z45takldtqji2grjg45))/Pdf/cafr/2014/CAFR2014.pdf (last visited July 30, 2015) ("NYCERS 2014 Final Report") (The five tiers are Tiers 1, 2, 3, 4, and 6. Legislation that created Tier 5 is applicable to state, not city, pension programs). Tier status is determined by the time period during which a pension member became a city employee. *Id.*

The concept of tiered retirement benefits, born in 1973, was part of an effort by the New York State legislature to combat the rising costs of pension programs. *See Lynch v. City of New York*, 16 N.E.3d 1204, 1206 (2014). An employee's tier membership status controls the amount of benefits received during retirement. *Id.* at 1208–1209. Construed most simply, tier status affects the benefit multiplier applied to an individual's number of years of service multiplied by his or her final average salary. *See, e.g.*, Fiscal Policy Institute, *How Much Does the Tier 6 Proposal Reduce Employee Retirement Benefits* (2012), http://www.fiscalpolicy.org/ FPI_ReducedPensionsUnderTier6_20120309.pdf (last visited July 30, 2015). The higher one's tier status number, the lower the benefit multiplier. *Id.*

Individuals who joined city government prior to July 1, 1973 are considered "Tier 1" members. *See* NYCERS 2014 Final Report at 13. Their benefits are not subject to a specific statutory scheme. *Id.* Tier 1 Plan B members, which the plaintiff in this suit was for a period of time, *see* Hearing Transcript ("Hr'g Tr."), July 27, 2015, are eligible to receive the following benefits at age fifty-five:

- For each year of credited service: 1.53 percent of final salary;

- Pension for employee contribution to pension account, (*i.e.*, "increased take-home pay" or "ITHP"); and

- Annuity of accumulated declarations.

*Id.* at 26. Members of Tier 1 are eligible to receive benefits from age fifty-five up until death. *See* NYCERS, *Options for Tier 1 Members* 1 (2009), http://www.nycers.org/Pdf/forms/923.pdf (last visited July 30, 2015). NYCERS also provides alternative options whereby members can opt to receive a reduced amount of benefits during their lifetime, with the remaining balance being paid to designated beneficiaries. *Id.* at 2–3.

Tier 2 and 3 members, neither of which is at issue in this case, are subject to distinct statutory schemes. Those who joined the system after July 1, 1973, but before July 27, 1976, who hold what has come to be referred to as "Tier 2" status, are subject to article 11 of the Retirement and Social Security Law ("RSSL") ("Limitations Applicable to New Entrants"). *See* NYCERS 2014 Final Report at 13. "Tier 3" members, those who started working for the city on or after July 27, 1976, are subject to article 14 of the RSSL ("Coordinated-Escalator Retirement Plan"). *Id.*

In 1983, a new statutory framework for the provision of retirement benefits to public employees was implemented under article 15 of the RSSL ("Coordinated Retirement Plan"). *Id.* This statute governs Tier 4 status and is at issue in this case. *Id.* It reads in pertinent part:

> [T]he provisions of this article shall apply to all members who join or rejoin a public retirement system of the state . . . and to all employees who would have been eligible to join or rejoin such a retirement system on or after such date but in lieu thereof elected an optional retirement program to which their employers are thereby required to contribute . . . .

> [P]ersons who . . . enter the employment of a public employer which participates for such employees in the New York city employees' retirement system . . . shall be required to become members or shall be eligible or ineligible for membership in such

> retirement system or pension fund in the manner provided for by
> the relevant provisions of the New York city administrative code
> and other relevant laws and rules and regulations . . . .

N.Y. Retire. & Soc. Sec. Law § 600(a), (b)(1).

In 1988, the Coordinated Retirement Plan was amended to expand the retirement rights of individuals working for the Triborough Bridge and Tunnel Authority ("TBTA") who qualified for a reduced retirement age. *Id.* at §§ 650–51. A New York City TBTA employee is *eligible* for a reduced retirement age if he or she, like plaintiff, held the position of "bridge and tunnel officer." *Id.* at § 650. Section 650 of the RSSL explains that the reduction in retirement age provision:

> shall apply to a member of [NYCERS] . . . who holds the position
> of bridge and tunnel officer . . . with the [TBTA], and . . . received
> . . . an appointment to [this] position from a competitive civil
> service list[.]

*Id.*; *see also* Paul M. Coltoff, *et al.*, *Pensions and Retirement Systems*, 83A N.Y. Jurisprudence § 341 (2d ed. 2015) (certain positions within the TBTA allow employees to retire at an earlier age without the loss of service retirement benefits).

RSSL section 651(a)(ii) provides that, for each full year of covered employment, a plan member "*may*," *i.e.*, is entitled to—but it is not mandatory—have the retirement age reduced by "four months." N.Y. Retire. & Soc. Sec. Law § 651(a)(ii) (emphasis added). The provision states in pertinent part:

> A member described in section [650] of this article *may* . . . retire
> without reduction of his or her service retirement benefit prior to
> the attainment of the normal retirement age . . . . For each full year
> of covered employment occurring prior to January [1, 2009] which
> is subsequent to December [31, 1970], his or her normal retirement
> age shall be reduced by four months.

*Id.* "Normal retirement age" means "age fifty-five for a member of Tier one, and age sixty-two for a member of Tier two, three or four." *Id.* at § 652(a).

Tier 4 TBTA members holding eligible positions pursuant to RSSL section 650, who have worked for twenty years or more, are eligible to receive fifty percent of their final salary for the first twenty years of credited service, for up to thirty years. *See* NYCERS 2014 Final Report at 54.

In 1999, the New York legislature permitted individuals who left public service, but then returned, to reapply for membership status in their original tiers. *See* N.Y. Retire. & Soc. Sec. Law § 645(2). The law is referred to as "Chapter 646 of the Laws of 1999." The statute reads in relevant part:

> Notwithstanding any other provision of law, *any person other than a retiree of a public retirement system*, who previously was a member of a public retirement system and whose membership in such public retirement system ceased by reason of
>
> (i)   insufficient service credit,
>
> (ii)  withdrawal of accumulated contributions, or
>
> (iii) withdrawal of membership, upon rejoining such public retirement system or another public retirement system, shall be deemed to have been a member of his or her current retirement system during the entire period of time commencing with and subsequent to the original date of such previous ceased membership, provided that such person
>
>> (a)  makes application therefor to the administrative head of his or her current public retirement system, and
>>
>> (b)  repays the amount refunded, if any, at the time such previous membership ceased, together with interest at the rate of five percent per annum compounded annually from the date of such refund through the date of repayment.

> Upon such reinstatement of date of membership, such member shall be entitled to all the rights, benefits and privileges to which he or she would have been entitled had his or her current membership begun on such original date of membership[.]

*Id.* (emphasis and paragraph breaks added).  A year later, in an attempt to clarify the intricacies of Chapter 646 of the Laws of 1999, NYCERS issued a two-page brochure clarifying eligibility requirements.  *See* NYCERS, *Membership Reinstatement* (2000), http://www.nycers.org/ pdf/forms/905.pdf (last visited July 30, 2015).  The following question and answer appears in the text:

> **Am I Eligible for Reinstatement?**
> **How do I find out if I am Eligible for Reinstatement?**
>
> You must be a member of NYCERS to be eligible for reinstatement.  If your membership in NYCERS or any other New York State retirement system was terminated prior to your current membership, file a Membership/Tier Reinstatement Form (Form #181).  NYCERS will then verify your eligibility and send you a statement of any costs associated with your reinstatement.

*Id.* (emphasis in original).

In 2001, amendments to RSSL article 15, and section 604-c specifically, permitted TBTA Tier 4 employees to receive additional benefits following the completion of twenty years of qualifying service.  Subsection 604-c(c) reads in relevant part:

> Service retirement benefits. . . .
>
> 1.  A participant in the twenty-year/age fifty retirement program:
>
>     (i)   who has completed twenty or more years of credited service; and
>
>     (ii)  who has attained age fifty*; and*
>
>     (iii) who has paid, before the effective date of retirement, all additional member contributions and interest . . . required . . . ; and

(iv) who files with the retirement system of which he or she is a member an application for service retirement setting forth at what time he or she desires to be retired; and

(v) who shall be a participant in the twenty-year/age fifty retirement program at the time so specified for his or her retirement;

shall be retired pursuant to the provisions of this section affording early service retirement.

2. . . . Notwithstanding any other provision of law to the contrary, the early service retirement benefit for participants in the twenty-year/age fifty retirement program who retire pursuant to paragraph one of this subdivision shall be a pension consisting of:

(A) an amount, on account of the required minimum period of service, equal to one-half of his or her final average salary; plus

(B) an amount of credited service, or fraction thereof, beyond such required minimum period of service equal to one and one-half percent of his or her final average salary.

. . .

N.Y. Retire. & Soc. Sec. Law § 604-c(c). The requirements of the statute are conjunctive. *Id.* To be considered "retired" pursuant to this provision an application for pension benefits "setting forth" a date of retirement is mandatory. *Id.* "[R]etirement applications are self-executing as of the date a member specifies in her retirement application." *Greene v. Teachers Ret. Sys. of City of New York*, 435 N.Y.S.2d 455, 460 (N.Y. Cnty. 1980) (collecting cases); *Pierne v. Valentine*, 52 N.E.2d 890, 893–94 (1943) ("Where a statute commands an officer or board to retire an applicant for retirement and to grant a retirement benefit when the necessary condition for retirement actually exists, the retirement is not complete until such officer or board has obeyed the command of the statute. If the applicant can show facts which leave no room for the exercise of discretion by the officer or board under a duty to complete the retirement, obedience to the

command of the statute may be in proper case compelled by order of the court. . . . [T]he retirement remains incomplete until every step required by the statute has been taken.").

Where a TBTA member resigned from service and completed "five *but less than twenty years*" of credited service, vesting is automatic. N.Y. Retire. & Soc. Sec. Law § 604-c(d) (emphasis added). The vested benefit becomes "payable" on the "earliest date" a discontinued member could have "retired for service" if he or she had not resigned. *Id.* But the member need not retire on the earlier date. The TBTA vesting provision reads:

1.  A participant in the twenty-year/age fifty retirement program who:

    (i)   discontinues service as a [TBTA] member, other than by death or retirement; *and*

    (ii)  . . . prior to such discontinuance, *completed five but less than twenty years of credited service . . .; and*

    (iii) has paid, prior to such discontinuance, all additional member contributions and interest (if any) required by subdivision e of this section; *and*

    (iv)  does not withdraw in whole or in part his or her accumulated member contributions . . .;

          *shall be entitled to receive a deferred vested benefit[.]*

2.  . . . Upon such discontinuance . . . , such *deferred vested benefit shall vest automatically*, [and] shall become payable on the earliest date on which such discontinued member could *have retired for service if such discontinuance had not occurred*[.]

3.  Such deferred vested benefit shall be a pension consisting of an amount equal to [2.5] percent of such discontinued member's final average salary, multiplied by the number of years of credited service.

*Id.* (emphasis added).  The vesting provision does not specify that a TBTA member credited with less than twenty years of service shall be considered to be retired on the date his or her vested retirement benefit becomes payable.

## V.  Pension History of Plaintiff

### A.  Tier 1 Status:  1971–1977

Plaintiff David King started working for the Environmental Protection Administration ("EPA") on May 19, 1971, at the age of twenty-nine.  *See* Hr'g Tr., July 27, 2015; Application for Tier Reinstatement, June 16, 2006, ECF No. 1-2 at 6–7 ("Application for Tier Reinstatement") (reproduced in Part V.C); Declaration of Teresita V. Magsino, Assistant Corporation Counsel of the City of New York, in Support of Defendant's Memorandum of Law Addressing the Issues Identified on Remand by the United States Court of Appeals for the Second Circuit ¶ 5, June 3, 2015, ECF No. 37-1 ("Magsino Decl.") (explaining that plaintiff would have reached the age of fifty-nine on November 16, 2000, thereby indicating that he was born on November 16, 1941).  For retirement purposes, he was considered a Tier 1 member.  *Id.*

On April 14, 1977, at the age of thirty-five, King left the EPA to join the private sector. *See* Hr'g Tr., July 27, 2015.  He withdrew all the contributions he had made to his Tier 1 pension plan.  *Id.*

### B.  Tier 4 Status:  1984–2000

In 1984, King became a TBTA employee.  *See* Declaration of Plaintiff David King in Support of Opposition to NYCERS' Motion to Dismiss ¶ 2, June 3, 2015, ECF No. 36-1 at 2–5 ("King Decl."); Magsino Decl. ¶ 5.  He worked as a bridge and tunnel officer.  *See* Hr'g Tr., July 27, 2015.  Having joined the TBTA after 1983, plaintiff was considered a Tier 4 employee for retirement purposes.  *See supra* Part IV (discussing city pension scheme).  He resigned from his

TBTA position after sixteen years, at age fifty-eight, on August 19, 2000.  *See* King Decl. ¶ 3; Magsino Decl. ¶ 6.  He did not file an application for retirement benefits.  *See* King Decl. ¶ 3.

### C.  Application for Reinstatement to Tier 1 Status

Although the precise date is unknown, sometime in 2004, plaintiff learned by his own effort that former Tier 1 members could apply for reinstatement to Tier 1 status.  *Id.* ¶ 4.  He did so.  *Id.*  And, *on October 25, 2005, NYCERS informed him that his request had been reviewed and that he was eligible for reinstatement to Tier 1 status*.  *See* Letter from NYCERS, Oct. 25, 2005, ECF No. 1-2 at 2–3 (reproduced below).  The letter additionally indicated that, once reinstatement to a prior membership occurs, the "**reinstatement is irrevocable**."  *Id.* (emphasis in original).  This undoubtedly led King to believe that the Tier 1 assignment was correct and would not be changed.

RF

# NYCERS

RETIREMENT AND BENEFITS

**NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM**

MAIL ONLY:
335 ADAMS STREET,
SUITE 2300
BROOKLYN, NY 11201-3751

ALL OTHER SERVICES:
340 JAY STREET,
MEZZANINE LEVEL,
BROOKLYN, NY 11201-3751

TEL: (347) 643-3000

ACTING EXECUTIVE DIRECTOR: MILTON ARON

**October 25, 2005**

David King
#3D
— Revised Address

Member # 834715

Dear Member:

The New York City Employees' Retirement System, (NYCERS), has evaluated your request for membership/Tier reinstatement, in accordance with Chapter 646 of the Laws of 1999, and we have determined that you meet the eligibility requirements to reinstate your prior membership period(s). The cost to reinstate your prior membership(s) is determined by the sum of $1,397.17 you had previously received as a refund, at the time your membership terminated, **plus** 5% interest compounded annually **from the date of the refund to the date of repayment**.

To complete the reinstatement process, a lump-sum payment in the amount of **$5,584.28**, must be made payable to NYCERS and received **within 30 days** of the date of this letter. You may however, elect to transfer funds from your 457 or 403 (b) Deferred Compensation Plan to cover only your cost to reinstatement. To do so you must contact Deferred Compensation right away and request an *"In Service Distribution Form"*. Be sure to attach a copy of this letter to the form before submitting it for payment. You may reach Deferred Compensation at (212) 306-7760. However, NYC Transit Authority employees must dial (866) 682-7567 and NYC Health and Hospital employees must dial (800) 458-6333. All fund transfers must be received by the lump sum due date indicated above. **Failure to remit payment on time will result in the automatic cancellation of your application.**

As a result of you completing the reinstatement process, your **NYCERS effective date of membership will change from 2/16/84 to 5/19/71**. Additionally, if the reinstated prior membership was a Tier 1 or Tier 2 membership, your Tier will also change and you may incur a deficit in your account as a result. **If your reinstatement calls for a change in Tier, be sure to read the "Tier Change" section of this letter. Once you have reinstated your prior membership, the reinstatement is irrevocable.** If your reinstatement has resulted in your eligibility to file an election to participate in another retirement plan(s), you will find the required forms enclosed for your submission. Please refer to the filing timeframe listed on the form(s) which, begins from the date of this letter.

`(OVER)`

18

kingIII-834715.doc
Page 2 of 2

**TIER CHANGE**    ☑ TIER I    ☐ TIER II

If you are a member who is reinstating a Tier 1 or Tier 2 prior membership, you will be assigned a new NYCERS membership and the rate of contributions you are required to pay will change. Therefore, you are likely to incur a deficit in your NYCERS membership account. A deficit is an additional cost you will need to pay, now or after your reinstatement has been processed, to bring your Tier 1 or Tier 2 NYCERS membership account up-to-date with the required amount of contributions. If we have determined that a deficit would result, the lump sum amount and optional payroll deductions schedule are noted below:

☐ Deficit does not exist

☑ Deficit exists;
      (1) In Non-tax deferred (non-414h) contributions= **$5,544.72**.
      **OR** **N/A** biweekly installments of **N/A** as of your **N/A** payroll date.
      (2) In Tax-deferred (414h) contributions= **N/A** (Payroll deductions for this deficit are
not available until deficit in non-414h is paid).

You should note the use of your Deferred Compensation funds cannot be used to pay for a deficit in your membership contributions. Failure to pay any deficit will result in the reduction of your retirement benefit amount or in some cases it may prevent you from retiring.

Also for your convenience, we have enclosed a self addressed stamped envelope for the submission of your lump sum payment(s). If you are remitting more than one (1) lump sum payment, please be sure to indicate the payment type (i.e. "reinstatement cost" or "deficit payment").

**P.S. You must elect Plan B on the enclosed Tier I membership application to be eligible for retirement since you do not have 25 years of service.**

Very truly yours,

James Licitra
Member Services

*Id.*

      Eight months later, on June 16, 2006, NYCERS received King's Tier 1 reinstatement paperwork. *See* Application for Tier Reinstatement (reproduced below).

# NYCERS
### RETIREMENT AND BENEFITS

**NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM**

MAIL ONLY:          ALL OTHER SERVICES:
335 ADAMS STREET,   340 JAY STREET,
SUITE 2300          MEZZANINE LEVEL
BROOKLYN, NY 11201-3751   BROOKLYN, NY 11201-3751
TEL.: (347) 643-3000
Executive Director: DIANE D'ALESSANDRO

FOR OFFICE USE ONLY

06 JUN 16 PH 1:25

## Membership/Tier Reinstatement

This application is for any member who had a former membership with NYCERS or any other New York City or New York State public retirement system, and who now wants to apply to purchase reinstatement of that former membership status. If eligible, this reinstatement could change your Tier and membership date, and may affect your contribution rate and various retirement benefits. The FACT SHEET on Page 3 contains only brief explanations of the requirements and obligations associated with membership reinstatement. Complete details are available on NYCERS Membership Reinstatement brochure (Form #905) which you can obtain from our website or from any NYCERS representative. Should you have any questions, please feel free to contact our Call Center at 347-643-3000.

### CURRENT INFORMATION

Membership Number  8,3,4,7,1,5            Social Security #

First Name D,A,V,I,D                      Middle Initial S

Last Name K,I,N,G

Address                                   Apt. Number 3-D

City B,R,O,O,K,L,Y,N                      State N,Y   Zip Code 1,1,2,2,5

Home Phone Number                         Work Phone Number (___)___-____

### Former Member Information

If you are applying for more than one former membership, please enter the information for each one separately - this form allows for up to three such entries. NYCERS will provide you with a cost letter for each entry.

**1. First Former Membership**

Name of Retirement System N,Y,C,E,R,S

Former Member Number (if known) 4,6,8,7,3,2

Dates of Service  From: 0,5 / 1,9 / 1,9,7,1   To: 0,4 / 1,4 / 1,9,7,7

Same Last Name as current information?  Y ☑   N ☐

If no, please provide us the full name used during such membership _____

**2. Second Former Membership**

Name of Retirement System _____

Former Member Number (if known) _____

Dates of Service  From: __/__/____   To: __/__/____

Same Last Name as current information?  Y ☐   N ☐

If no, please provide us the full name used during such membership _____

| In use beginning November 2005 | Sign this form and have it notarized, Page 2 | **Form # 181** |
|---|---|---|
| Membership Reinstatement | | Page 1 of 3 |

# NYCERS

**NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM**

MAIL ONLY!
335 Adams Street,
Suite 2300
Brooklyn, NY 11201-3751

ALL OTHER SERVICES:
340 Jay Street,
Mezzanine Level
Brooklyn, NY 11201-3751
Tel: (347) 643-3000

**RETIREMENT AND BENEFITS**

Executive Director: Diane D'Alessandro

Membership Number [M 3 4 7 1 ]       Social Security

**3. Third Former Membership**

Name of Retirement System [                              ]

Former Member Number (if known) [                    ]

Dates of Service  From: [ M M | D D | Y Y Y Y ]    To: [ M M | D D | Y Y Y Y ]

Same Last Name as current information?  Y ☐   N ☐

If no, please provide us the full name used during such membership _____

---

NYCERS must receive this application prior to your retirement date. If you have already filed your retirement papers, or will in the very near future, please provide us your expected NYCERS retirement date here. [ M M | D D | Y Y Y Y ]

I understand that by signing this form, I am confirming that the information on this form, to the best of my knowledge, is correct.

Signature of Member _____     Date [ 0 6 | 1 6 | 2 0 0 6 ]
                                                          M M | D D | Y Y Y Y

---

**This form must be acknowledged before a Notary Public or Commissioner of Deeds**

State of [     ]  County of [                                        ]

On this [     ] day of [                    ] [ 2 0 ] , personally appeared before me the above named,

[                                        ] to me known, and known to me to be the individual described in and who executed the foregoing instrument, and he or she acknowledged to me that he or she executed the same, and that the statements contained therein are true.

Signature of Notary Public or
Commissioner of Deeds [                    ]       If you have an official seal, affix it.

Official Title [                    ]

Expiration Date of Commission [ 06/16/06 ]

---

**HAVE YOU MOVED RECENTLY?**

Old Address:                    New Address: (check box if same as above) ☐
_____            _____
_____            _____

---

| In use beginning November 2005 | Sign this form and have it notarized, THIS PAGE | **Form # 181** |
| Membership Reinstatement | | Page 2 of 3 |

*Id.* (emphasis added).

The last page of the application form, titled "Membership Reinstatement Fact Sheet," indicated that those eligible to apply for reinstatement are: "Active members who previously lost membership rights with NYCERS or any other New York public retirement system . . . ." *Membership Reinstatement Fact Sheet*, ECF No. 1-2 at 8.

# NYCERS
### RETIREMENT AND BENEFITS

NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM

| MAIL ONLY: | ALL OTHER SERVICES: |
|---|---|
| 335 Adams Street, | 340 Jay Street, |
| Suite 2300 | Mezzanine Level |
| Brooklyn, NY 11201-3751 | Brooklyn, NY 11201-3751 |

Tel: (347) 643-3000
Executive Director: Diane D'Alessandro

Membership Number ⌞_⌞_⌞_⌞_⌞_⌞_⌟          Social Security # ⌞_⌞_⌞_⌟-⌞_⌞_⌟-⌞_⌞_⌞_⌞_⌟

## MEMBERSHIP REINSTATEMENT FACT SHEET

**Who Can Apply?**
Active members who previously lost membership rights with NYCERS or any other New York public retirement system may apply.

*Id.*

On December 17, 2007, Fabyane Carter, the Supervisor of NYCERS' Vesting Unit, notified King that he was entitled to a "deferred retirement allowance" pursuant to Tier 1, dating from June 16, 2006, "the date [his] valid Member/Tier Reinstatement form (Form 181) was received by NYCERS." Letter from NYCERS, Dec. 17, 2007, ECF No. 1-2 at 10 ("December 17, 2007 Letter"); Application for Tier Reinstatement. The letter read as follows:

Dear David King:

Our records indicate that you have a vested right to a deferred retirement allowance under the above-mentioned Tier I membership, which according to our records was on **June 16, 2006\***.

Therefore, enclosed is an Application for Payment of a Vested Retirement Benefit Tier 1 and 2 Members (Form 261). After proper completion and acknowledgment before a notary public or commissioner of deeds, please return to our office along with a proof of birth request.

**Please be aware, that if your application is received in our office without proof of birth, your form will be *filed without action*.**

Very truly yours,

Ms. Fabyane Carter, Assoc. R. B. E.
Supervisor, Vesting Unit

Enclosure
*the date your valid Membership/Tier Reinstatement form (Form 181) was received by NYCERS

December 17, 2007 Letter (emphasis added).

Electing to be reinstated as a Tier 1 member, King paid NYCERS the lump sum of

$11,462.55, the full amount NYCERS had requested. *See* Letter from NYCERS to King, Sept.

4, 2008, ECF No. 1-2 at 29–30 ("Decision Letter") (reproduced below).

On January 9, 2008, plaintiff received the following correspondence, acknowledging that

his "payability form" was received on January 8, 2008—the date being in bold type.



NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM

| MAIL ONLY: | ALL OTHER SERVICES: |
|---|---|
| 335 Adams Street, | 340 Jay Street, |
| Suite 2300 | Mezzanine Level |
| Brooklyn, NY 11201-3751 | Brooklyn, NY 11201-3751 |

TEL: (347) 643-3000
Executive Director: Diane D'Alessandro

January 09, 2008

David King
Apt 3D

Member #183683

Subject: Letter of Acknowledgment

Dear David King:

This letter serves to acknowledge the receipt of the following information you submitted to the New York City Employees' Retirement System (NYCERS).

☐ We have received your Intent to Vest form on . You will be notified of your eligibility for a vested benefit by mail in the near future.

■ We have received your payability form on **January 08, 2008,**

☐ On , we received your payability form. However, your payability form will be filed without further action because of the following:

    ☐ The form was received 90 days before your retirement date. A new form may be submitted :( give a time period or other instruction).
    ☐ The form was not notarized.
    ☐ The form was not signed.
    ☐ You are not a member of NYCERS.
    ☐ Other:

☐ Other:
Please retain this letter in a secure place for future reference.

Sincerely,

Ms. Fabyane Carter, Assoc. R. B. E.
Supervisor, Vesting Unit

All Calls Answered By
NYCERS Call Center
Phone: 347-643-3000

Visit our Website at:
www.nycers.org

\\Hulk\my unit\Vesting\SENT LETTERS\M#183683, Payability form Acknowledgement.doc

Letter from NYCERS, Jan. 9, 2008, ECF No. 1-2 at 23.

*Payment of King's Tier 1 benefits started* around March 2008.  *See* King Decl. ¶ 11.

### D.  Denial of Tier 1 Reinstatement Application

Six months later, King was informed that his reinstatement to Tier 1 status was "in error"

and that he would be relegated to Tier 4 status.  *See* Decision Letter (reproduced below).



# NYCERS
### RETIREMENT AND BENEFITS

MAIL ONLY:
335 ADAMS STREET,
SUITE 2300
BROOKLYN, NY 11201-3751

ALL OTHER SERVICES:
340 JAY STREET,
MEZZANINE LEVEL
BROOKLYN, NY 11201-3751
TEL: (347) 643-3000

EXECUTIVE DIRECTOR: DIANE D'ALESSANDRO

September 4, 2008

Mr. David King

Re: M# 834715
P# 338442

Dear Mr. King:

I am writing in response to your most recent inquiry dated July 18, 2008 and telephone communications with Mr. Norman Rosenfeld regarding your effective date of retirement and the pension benefit payable to you.

A thorough review of your membership file has been completed. It has been determined that your reinstatement from Tier 4 to Tier 1 was processed in error since you were retired under Tier 4 effective November 16, 2000, when you filed the application for tier reinstatement. By law, an application for tier reinstatement must be filed while an active member. Therefore, you were incorrectly designated as a Tier 1 member and pensioner.

Accordingly, your retirement benefit should have been payable under your Tier 4 membership with a payability date of November 16, 2000. However, you are currently receiving a monthly retirement allowance calculated under Tier 1 Plan B with a payability date of June 16, 2006. As a result, there is a difference in the amount of your pension payments based on the tiers and payability dates as indicated in the table below.

| Tier | From | To | Annual Allowance | Amount Paid | Amount you should have been Paid | Difference |
|---|---|---|---|---|---|---|
| 1 | 06/16/06 | 08/31/08 | $19,835.87 | $ 9,307.66 | $ 0.00 | ($9,307.66) |
| 4 | 11/16/00 | 08/31/08 | $ 6,240.80 | $38,192.00 | $49,210.10 (includes COLA: $584.49) | $11,018.10 |
| | | Total | | $47,499.66 | $49,210.10 | $1,710.44 |

Effective with the September 30, 2008 payroll, you will begin to receive your Tier 4 monthly pension payment in amount of $555.78 ($520.06 + 35.72 COLA). You will also receive the adjustment payment in the amount of $1,710.44. The Tier 4 Retirement Resolution will be mailed to you shortly.

25

In addition, you will receive a refund of the lump sum payments originally paid by you on November 17, 2006 for the cost of tier reinstatement ($5,917.83) and deficit ($5,544.72) with interest at 5% compounded annually up through September 18, 2008. The total refund due you is $12,541.62, of which $11,462.55 is principal and $1,079.07 is interest.

Furthermore, you would have an opportunity to apply for tier reinstatement if you re-enter City service and establish a new membership with NYCERS within 90 days of employment. Once membership is established your pension would be terminated and you would become a restored pensioner. When this is accomplished, you could begin the tier reinstatement process again. Keep in mind that in order to fully reap the benefits of a restored pensioner you would have to earn at least three years of additional membership service. Otherwise, the benefit payable on your second retirement will be the total of the first retirement benefit under Tier 4 plus an additional pension calculated under Tier 1 Plan B for the service rendered in the second membership. For all service to be calculated under Tier 1 Plan B you would have to render at least three years in the second membership.

I hope this clarifies the questions concerning your retirement. If you have any further questions, I can be reached at (347) 643 – 3114.

Very truly yours,

Andrew Feneck
Director of Operations

c: Norman Rosenfeld

Andrew N. Feneck
Director of Operations
Phone: 347-643-3114
Fax:    347-643-3800
E-Mail: afeneck@nycers.nyc.gov

www.nycers.org

*Id.* (emphasis added).  No notice in the letter indicated that King could challenge this adverse financial decision before NYCERS or any court.

Reliance in the penultimate paragraph of the letter to reentry into service is not relevant. *See* N.Y. Admin. Code § 13-178 ("Benefits upon re-entry into membership; after retirement."). Plaintiff was not seeking reentry.

26

In sum, NYCERS explained that because King had reached his "payability date" on November 16, 2000, he was deemed retired as of that date. *Id.* If he were not retired as of that date, it would not have been a mistake to afford plaintiff Tier 1 status. *See supra* Part I.B.

NYCERS failed to clarify how it determined that King was retired as of November 16, 2000. Analysis of the applicable statutory provisions, guided by the declaration appended to NYCERS' moving papers, has led to the conclusion that NYCERS' "payability date" resulted from its application of five distinct RSSL provisions:

- Section 604-c(d): indicating that pension benefits of TBTA members vest automatically when these members are credited with more than five years, but less than twenty years, of credited service;

- Section 645(2): stating that only individuals who have not retired are eligible for tier reinstatement;

- Section 650: explaining that TBTA bridge and tunnel officers qualify for a reduced retirement age;

- Section 651: asserting that the "normal retirement age" of an eligible TBTA officer will be reduced by four months for each full year of service; and

- Section 652: defining "normal retirement age" as sixty-two.

*See supra* Part IV (discussing pension scheme); Magsino Decl. ¶¶ 7–14.

While not explained by NYCERS, it is apparent that it was applying these provisions to arrive at King's "payability" date. The formula is: (date on which TBTA member shall reach retirement age) *minus* (each full year of credited service rendered by eligible TBTA member *multiplied by* four months). Reduced to numbers, understanding that King turned sixty-two on November 16, 2003, the formula produces the following result: 11/16/2003 – (9 x 4 months) = 11/16/2000.

The "9" full years of credited service is based on calculations drawn from and required by the evidence. *See* Magsino Decl. ¶¶ 10–11 ("[B]ecause plaintiff held a specific position

within the TBTA . . . [,] NYCERS determined that he was entitled to reach his payability date

. . . three years before the age of 62. . . . November 16, 2000.").  Although King worked for the

TBTA for sixteen years, he did not work consistently throughout the sixteen year period.  *See*

Hr'g Tr., July 27, 2015.  In layman's terms, because nine full years of credited service multiplied

by four months yields thirty-six months, or three years, NYCERS determined plaintiff's

"payability date" to have occurred three years prior to the date on which he would have turned

sixty-two, *i.e.*, on November 16, 2000.  In its September 4, 2008 letter, without explaining how it

turned plaintiff's "payability date" into his retirement date, NYCERS wrote:  "[Y]ou were retired

under Tier 4 effective November 16, 2000."  Decision Letter.

Considering King to have already been retired when he applied for reinstatement to Tier

1 status, NYCERS claimed it was precluded from accepting and processing King's reinstatement

application.  *See* Decision Letter; *see also* Affidavit of Andrew Feneck, Director of Quality and

Special Projects for NYCERS, ¶ 9, Nov. 10, 2011, ECF No. 10-2 at 49–52 ("Feneck Aff.").

Plaintiff was informed that his pension benefits from that point forward would be reflective of

his Tier 4 pension status.  *See* Decision Letter.  If he wished to apply for reinstatement to Tier 1

status, he was told that he would have to "re-enter" city service and establish a new membership

with NYCERS within 90 days of employment and render at least three years of additional

membership service.  *Id.*

### E.  Tier 4 Pension Benefit Payments

Since September 30, 2008, King has been receiving monthly checks from NYCERS in

the amount of $555.78.  *Id.*  This amount represents his pension benefits under the Tier 4 plan.

*Id.*  It is approximately $1,000 less per month than the amount he would receive under Tier 1.

*See* Decision Letter; Feneck Aff. ¶ 15.

## VI. Procedural History

### A. State Claim

On August 25, 2011, plaintiff brought an article 78 action in New York State Supreme Court, Kings County. *See* Compl. ¶ 26(b), Aug. 22, 2013, ECF No. 1 ("Compl."). He sought to vacate and set aside the September 4, 2008 decision denying his application for reinstatement to Tier 1 membership status. *See* Order of the Supreme Court of the State of New York County of Kings, Jan. 23, 2012, ECF No. 1-3 at 9–11.

Defendant submitted a "Cross-motion" to dismiss the petition, claiming the four-month limitations period applicable to article 78 petitions, as set forth in section 217 of New York's Civil Practice Law and Rules, had expired. *Id.*

On January 23, 2012, the New York State Supreme Court dismissed plaintiff's petition as untimely, finding the substantive claims "to be without merit." *Id.* Judgment was entered in favor of defendant. *Id.* The entire decision read:

> Petitioner David King commenced this Article 78 proceeding seeking to vacate, annul and set aside the decision of the New York City Employees Retirement System (NYCERS), and its Deputy Director, Andrew Feneck, dated September 4, 2008, which denied his application for reinstatement to Tier 1 membership. Respondents appeared in the proceeding and submitted a cross-motion to dismiss the petition on the ground that it was not commenced within the four month limitations period set forth in CPLR § 217.
>
> It is well settled that to commence a timely proceeding pursuant to CPLR Article 78, "a petitioner must seek review of determination within four months after the determination to be reviewed becomes final and binding[.]" A determination becomes final and binding when it has an impact on the petitioner, which in this case, was . . . when the petitioner was notified of NYCERS determination that his application to be reinstated to Tier 1 membership was being denied. Notably, petitioner admitted in his petition that NYCERS notified him of its determination around this time. Inasmuch as petitioner did not commence this proceeding until August 25, 2011, more than three years later, the petition must be dismissed as

> untimely. *It is no moment that petitioner maintains in his petition*
> *that NYCERS breached its contract with him, violated certain*
> *fiduciary duties and committed fraud.*
>
> *The Court has considered petitioner's remaining arguments and*
> *find[s] them to be without merit.* Accordingly, it is thereby
> Ordered, Adjudged and Decreed that judgment be entered in favor
> of the respondent dismissing petitioner's petition. This constitutes
> the decision and order of the Court.

*Id.* (citations omitted) (emphasis added).

### B. Federal Claim

Plaintiff filed the instant action *pro se* on August 22, 2013. *See* Compl. He asserted that

the state court improperly dismissed his claims on the merits without conducting an evidentiary

hearing. *Id.* at ¶ 26(b). Alleged were violations of (1) plaintiff's constitutional right to due

process; (2) breach of contract and breach of fiduciary duty pursuant to section 7 of article V of

New York State's Constitution, New York law and NYCERS' rules and regulations; and

(3) violation of section 349 of New York's General Business Law ("GBL"). *Id.* at 1–2.

Additionally, as part of his due process argument, plaintiff claimed to have suffered

conscious pain, suffering, and mental anguish, in the amount of $100,000, and other losses, as a

result of NYCERS' revocation of his Tier 1 membership. *Id.* at 15. These damages are not

being awarded since recovery is based on contract, not due process. *See infra* Part XI.

Plaintiff moved to void and nullify the judgment of the New York Supreme Court

pursuant to Federal Rule of Civil Procedure 60(b)(4). *See* Plaintiff's Memorandum in Support of

His Motion to Void and Nullify the Judgment of New York Supreme Court, Kings County, Aug.

22, 2013, ECF No. 1-3 at 4–7.

On October 16, 2013, NYCERS moved to dismiss the federal complaint and deny

plaintiff's Rule 60(b)(4) motion with prejudice. *See* Defendant's Motion to Dismiss 1, Oct. 16,

2013, ECF No. 10. Defendant contended that plaintiff was barred from bringing such a claim

pursuant to the *Rooker-Feldman* doctrine and *res judicata*. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss the Complaint Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and in Opposition to Plaintiff's Motion Pursuant to Rule 60(b)(4), Oct. 16, 2013, ECF No. 10-3 at 2–3, 11–12, 16–18.

On November 25, 2013, the district court held a hearing on defendant's motion to dismiss and plaintiff's Rule 60(b)(4) motion. *See* Minute Entry for Motion Hearing re First Motion to Dismiss for Lack of Jurisdiction and First Motion to Dismiss for Failure to State a Claim by NYCERS, Nov. 25, 2013, ECF No. 17. Defendant's motion was granted pursuant to the *Rooker-Feldman* doctrine since the state article 78 judge had decided all plaintiff's claims, *see supra* Part VI.A; plaintiff's motion was dismissed. *See* Order & Judgment, Nov. 25, 2013, ECF No. 15. It was held that the court was barred from reviewing the article 78 decision. *See* Hearing Transcript of November 25, 2013, in Letter with Transcript and Order and Judgment Issued by the Court, 14:23–15:3, 16:3–12, 17:2–3, 18:21–24, Dec. 12, 2013, ECF No. 18.

### C. Appeal and Remand

Plaintiff appealed. *See* Notice of Appeal, Dec. 23, 2013, ECF No. 19.

On December 10, 2014, the Court of Appeals for the Second Circuit issued a summary order. *See* Summary Order of United States Court of Appeals for the Second Circuit, Dec. 10, 2014, ECF No. 22; *King v. NYCERS*, 595 F. App'x 10 (2d Cir. 2014) (same). It (1) affirmed the district court's judgment insofar as it dismissed plaintiff's Rule 60(b)(4) motion to void the state court's article 78 judgment, *King*, 595 F. App'x at 12; (2) ruled that plaintiff's due process action was not barred by the *Rooker-Feldman* doctrine, *id*. at 11; and (3) vacated the district court's dismissal of plaintiff's due process complaint, remanding the case for further proceedings, *id.* at 12.

The matter was remanded with the appellate court suggesting that the district court consider (1) whether plaintiff's claim was barred by *res judicata*; (2) whether his federal due process claim was barred by the three-year statute of limitations; and (3) whether plaintiff stated a plausible federal due process claim. *Id*. The summary order of the Court of Appeals for the Second Circuit reads in pertinent part:

> King's action is not barred by *Rooker-Feldman* because he does not solely complain of injuries caused by a state court judgment. Rather, he complains of NYCERS's decision to deny him Tier I benefits. That decision predates his Article 78 proceeding, and so could not have been caused by those proceedings. . . . Therefore, *Rooker-Feldman* does not preclude King's action against NYCERS, except in one respect.
>
> In his complaint, King challenged a decision rendered in a prior state court action dismissing his Article 78 proceeding against NYCERS as time-barred. King apparently filed a Fed R. Civ. P. 60(b)(4) motion in the district court below to "void" the state court judgment. The *Rooker-Feldman* doctrine would preclude King's efforts to void the state court judgment, but King is no longer challenging that judgment.
>
> On remand, the district court may wish to consider a number of other defenses. First, NYCERS moved below to dismiss the complaint based on the doctrine of res judicata, but the district court apparently did not reach the question, as it held that it lacked jurisdiction to hear King's claims. Res judicata bars a subsequent action—involving either the same plaintiffs or parties in privity with those plaintiffs—from asserting claims that were, or could have been, raised in a prior action that resulted in an adjudication on the merits. NYCERS argues that a state court dismissal on statute of limitations grounds is a merits decision. We have held that a New York state court time-bar dismissal does not preclude bringing the same claim in another jurisdiction with a longer statute of limitations. We have since questioned that holding, however. If the district court is going to rely on the doctrine of res judicata, it must address this question.
>
> Second, even assuming King is not precluded from pursuing his federal due process claim, there exists a question as to the timeliness of any such claim. King's due process action is governed by the three-year statute of limitations applicable to 42

U.S.C. § 1983 suits. NYCERS denied Tier I benefits to King in 2008 and he filed the instant action in 2013, well more than three years after the denial, but the district court may wish to explore whether tolling or estoppel might apply. . . .

Finally, even if King's suit is not barred by res judicata or the statute of limitations, he must still plead a plausible due process claim. Our Court and others within the Circuit have held that the availability of post-deprivation Article 78 proceedings in the NYCERS pension context is generally constitutionally adequate process even where the process internal to NYCERS was not wholly adequate, or where the plaintiff failed to timely file an Article 78 complaint. The district court may wish to consider whether King has stated a plausible federal due process claim in light of these cases.

*Id.* at 11–12 (citations omitted).

## VII. Motion to Dismiss

### A. Standard

The same standard of review applies to motions to dismiss brought under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Lerner v. Fleet Bank, NA.,* 318 F.3d 113, 128 (2d Cir. 2003) (concluding that the standard of review on a motion to dismiss under Federal Civil Procedure Rule 12(b)(6) is "substantively identical" to the Federal Civil Procedure Rule 12(b)(1) standard). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). On a motion to dismiss for failure to state a claim, a court must accept the plaintiff's "factual allegations as true, drawing all reasonable inferences in plaintiff's favor." *Friedman v. Maspeth Fed. Loan & Sav. Ass'n.*, No. 13-CV-6295, 2014 WL 3473407, at *2 (E.D.N.Y. July 14, 2014) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 583 (2007) (citation omitted). It is the "legal

feasibility of the complaint," and not the weight of the evidence, that must be assessed. *DiFolco*

*v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation omitted).

### B.  Consideration of Matters Extraneous to Complaint

A court "may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits, and documents incorporated by reference in the complaint." *Id.* at 111;

*Turkmen v. Hasty*, No. 13-1002, 2015 WL 3756331, at *20 (2d Cir. June 17, 2015) (summary

order) (same).  Documents not incorporated by reference may be considered where the complaint

"relies heavily upon its terms and effect," thereby rendering the document "integral" to the

complaint. *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006) (citation omitted); *see*

*also Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir. 2006) ("[I]f a document is 'integral' to the

complaint, it must be clear on the record that no dispute exists regarding the authenticity or

accuracy of the document." (citation omitted)).

## VIII.  Due Process

### A.  Law

The fourteenth amendment to the United States Constitution provides that no person shall

be deprived of "property, without due process of law."  U.S. Const. amend. XIV.

> The types of property interests protected by the Due Process
> Clause are not defined by the Constitution itself, but are instead
> "'defined by existing rules or understandings that stem from an
> independent source such as state law—rules or understandings that
> secure certain benefits and that support claims of entitlement to
> those benefits.'"

*Morris*, 129 F. Supp. 2d at 606 (citation omitted).

A litigant may bring a cause of action for violation of rights pursuant to the due process

clause of the United States Constitution via section 1983 of title 42 of the United States Code

("section 1983").  *See Aronson v. NYCERS*, 757 F. Supp. 226, 228–30 (S.D.N.Y. 1991).

34

Asserting a section 1983 claim requires a showing that: (1) the defendant acted under color of state law; and (2) the defendant's action resulted in a deprivation of the plaintiff's constitutional rights. *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004); *Williams v. N.Y.C. Hous. Auth.*, 335 F. App'x 108, 110 (2d Cir. 2009) (summary order) (same). NYCERS is an actor under color of state law for purposes of a section 1983 claim. *See, e.g.*, *Campo v. NYCERS*, 843 F.2d 96, 99 (2d Cir. 1988).

## 1. Equitable Tolling and Equitable Estoppel

The statute of limitations for a section 1983 claim is three years. *See, e.g., Connolly v. McCall*, 254 F.3d 36, 40 (2d Cir. 2001). It is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law in appropriate circumstances. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465 (1975) ("[C]onsiderations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration."); *Kaiser v. Cahn*, 510 F.2d 282, 286–87 (2d Cir. 1974) ("Although the state statute of limitations most analogous to the civil rights claim is borrowed, the question of when the claim for relief accrued remains a question of federal law.").

> In practice, resolution of the tolling question involves striking a balance between protection of the substantive federal policy under consideration on the one hand and protection of the policy behind the statute of limitations on the other hand. The plaintiff's conduct, particularly his diligence in pressing his claim also is taken into account.

*Meyer v. Frank*, 550 F.2d 726, 729 (2d Cir. 1977) (citations omitted).

Recent Court of Appeals for the Second Circuit cases have narrowed the application of the equitable tolling doctrine to "rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x. 157, 159 (2d Cir. 2010) (quoting *Zerilli–Edelglass v. N.Y.C. Transit Auth.*,

333 F.3d 74, 80 (2d Cir. 2003)). *But see, e.g.*, *Rodriguez v. Holmes*, 963 F.2d 799, 805 (5th Cir. 1992) ("We find that Rodriguez as best he could as a *pro se* litigant diligently pursued his claims. He filed this civil rights action immediately after his exhaustion of state law remedies. By no means can this litigant be regarded as having 'slept' on his rights. Further, Rodriguez did not lull the defendants into believing that the section 1983 claim would never be raised[.]" (citation omitted)).

Equitable estoppel may be invoked where a plaintiff was aware of his cause of action but delayed in bringing it because of the defendant's conduct. *See Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986). "This doctrine is applicable where, for example, 'the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation.'" *Robie v. Obst*, No. 14-CV-57S, 2015 WL 4208639, at *4 (W.D.N.Y. July 9, 2015) (citation omitted) (denying equitable tolling, but emphasizing that the complaint failed to allege that the post-deprivation grievance procedures available were inadequate).

Equitable estoppel applies to denial of pension benefit cases where NYCERS failed to inform a pensioner of his or her right to challenge its determination in an article 78 proceeding, and of the applicable four-month statute of limitations period. "[C]ases establish that, *after a government benefit has been denied, due process requires clear and explicit notice not only of the basis of the denial but also of the opportunity for redress*." *Morris*, 129 F. Supp. at 610–11 (emphasis added) (finding "NYCERS was required to advise [plaintiff] with greater clarity of his right to challenge [his denial of benefits] through an Article 78 proceeding"); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 345 (E.D.N.Y. 2009) ("[I]t is conceivable that the letter from defendants' counsel . . . , relaying the determination that the plaintiff was ineligible for health

insurance benefits, could give rise to a Due Process claim if it failed to notify the plaintiff of the basis for this determination or failed to provide the plaintiff with adequate information regarding his right to contest the determination."); *see also Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 14–15 (1978) (finding that final notice contained in municipal utility's bills, stating that payment was overdue and that service would be discontinued if payment was not made by certain date, was not reasonably calculated to inform customers of availability of procedure for protesting proposed termination of utility service, and thus unjustifiably deprived customers of notice to which they were entitled under due process clause); *Weaver v. NYCERS*, 717 F. Supp. 1039, 1045 (S.D.N.Y. 1989) (ruling that notice indicating that NYCERS was terminating plaintiff's benefits violated due process because it did not describe the procedure for protesting the termination; the notice "present[ed] him with a *fait accompli* rather than a meaningful opportunity to rebut" the findings); *McNair v. N.Y.C. Hous. Auth.*, 613 F. Supp. 910, 914 (S.D.N.Y. 1985) (holding that notice provided to public housing litigants was insufficient, highlighting that "[i]t would cost virtually nothing to give applicants notification . . . of the procedures open to them to seek redress").

Notice of the right to contest should be given, and it should be done in plain language. *See David v. Heckler*, 591 F. Supp. 1033, 1043 (E.D.N.Y. 1984) (finding that determination letters by administrative bodies that fail to enable a beneficiary "to determine either the actual basis" of an adverse decision or whether the determination made "has been calculated correctly" denies individuals the "opportunity to meet the case against them"). "'An elementary and fundamental requirement of due process in *any proceeding which is to be accorded finality is notice* reasonably calculated, under all the circumstances, *to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.*'" *Strouchler*

*v. Shah*, 891 F. Supp. 2d 504, 520 (S.D.N.Y. 2012) (emphasis added) (quoting *Memphis*, 436 U.S. at 13). Equitable estoppel must be applied where there is a failure to provide such notice.

### 2. Procedural Due Process Claim

Procedural due process claims require a party to satisfy three elements: "*first* identify a property right, *second* show that the government has deprived him of that right, and *third* show that the deprivation was effected without due process." *Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 254 (E.D.N.Y. 2014) (citing *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL–CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)) (emphasis added).

The Court of Appeals for the Second Circuit has tasked and changed course in dealing with the procedural due process clause. It has ruled variously. For example, it has found that an individual's right to due process is violated when there is no hearing *prior to* the termination of a protectable interest, despite the availability of a post deprivation hearing, such as an article 78 proceeding. *Compare Patterson v. Coughlin*, 761 F.2d 886, 893 (2d Cir. 1985) (finding that where it was not impossible to accord inmate a predeprivation hearing prior to subjecting him to administrative segregation, a postdeprivation article 78 proceeding or action for damages in the Court of Claims, was inadequate to meet requirements of due process), *with Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (finding that where there "is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty," section 1983 is not the appropriate vehicle under which to bring a due process claim); *see also Krimstock v. Kelly*, 306 F.3d 40, 60 (2d Cir. 2002) ("Each of our due process cases has recognized, either explicitly or implicitly, that because minimum procedural requirements are a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S.

422, 432 (1982)); *Ahmed*, 7 F. Supp. 3d at 254 ("The Supreme Court . . . distinguishes between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." (citing cases)).  *But see Fleming v. Kerlikowske*, 201 F.3d 431, at *1 (2d Cir. 1999) (unpublished opinion) ("Plaintiff argues that . . . an administrative hearing is necessary when the deprivation occurs pursuant to an official policy or a predictable course of conduct.  We can see no reason to make the distinction the plaintiff suggests.  Our decisions, furthermore, are to the contrary.  *See, e.g.*, *Interboro Institute, Inc. v. Foley,* 985 F.2d 90, 93–94 (2d Cir. 1993) (holding that an Article 78 petition presented sufficient post-deprivation process to challenge an auditor's decision to disallow payments to a junior college based on predetermined criteria); *Oberlander v. Perales*, 740 F.2d 116, 120–21 (2d Cir. 1984) (holding that an Article 78 petition presented sufficient process to challenge medicaid reimbursement rates set by a panel according to a predetermined protocol).").

No procedural due process claim exists if the lack of due process prior to the termination of the protectable interest at issue occurred "based on random, unauthorized acts by state employees."  *Ahmed*, 7 F. Supp. 3d at 254.  A claim does, however, stand where the deprivation at issue occurred "based on established state procedures."  *Id.*  In *Ahmed*, the court explained that, in determining whether a procedural due process claim has been shown, claims based on established state procedures are distinguished from claims based on random, unauthorized acts by state employees.  *Id.*  Where a plaintiff alleges a deprivation pursuant to an established state procedure, the state can predict when it will occur and is thus in the position to provide a predeprivation hearing.  *Id.*  Under these circumstances, the availability of a postdeprivation procedure, such as an article 78 proceeding, does not itself satisfy due process requirements.  *Id.*  By contrast, when a plaintiff brings a procedural due process claim based on random

unauthorized acts by state employees, because the state could not have predicted that the deprivation would occur, a postdeprivation hearing, such as an article 78 proceeding, is the only form of due process that can be made available. *Id.*

> The Supreme Court has held that some process may be constitutionally required *prior* to the deprivation of a property right in many circumstances. Specifically, while post-deprivation remedies might satisfy due process "where the State is truly unable to anticipate and prevent a random deprivation," it is also true that, "in situations where the State feasibly can provide a predeprivation hearing before taking property, it must do so regardless of the adequacy of the postdeprivation remedy."

*Minima v. NYCERS*, No. 11-CV-2191, 2012 WL 4049822, at *6 (E.D.N.Y. Aug. 17, 2012) (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)), *report and recommendation adopted*, 2012 WL 4049978 (E.D.N.Y. Sept. 13, 2012).

In *Patterson*, plaintiff, a state inmate, was charged with assault and "interference with an employee" after a fight broke out between two individuals, neither of which was plaintiff. *Patterson*, 761 F.2d at 888. A hearing was convened, but plaintiff was prevented from calling any witnesses in his defense, and the prison failed to interview any witnesses that may have supported plaintiff's story that he was attempting to help break up the fight. *Id.* at 889. Sentenced to sixty days of solitary confinement, he appealed. *Id.* The judgment was affirmed. *Id.* An article 78 proceeding resulted in dismissal of the plaintiff's petition. *Id.* A federal *pro se* complaint resulted in dismissal at the district court level. *Id.*

On appeal, the Court of Appeals for the Second Circuit found that plaintiff had been denied an adequate *predeprivation* hearing. *Id.* at 890. At minimum, the state was required to provide plaintiff with the opportunity to prepare and voice a defense. *Id.* "[T]he state, through its agents, was obligated to provide an adequate hearing *before* the decision to discipline [plaintiff] was made final." *Id.* at 893 (emphasis in original). This requirement, the court wrote,

rendered "a postdeprivation hearing, by way of an Article 78 proceeding or an action for damages in the Court of Claims, . . . inadequate, by definition, to meet the requirements of due process." *Id.*; *see also Walker v. Bates*, 23 F.3d 652, 657 (1994) (same); *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) (same).

Applying the standard of the Court of Appeals for the Second Circuit in *Patterson,* the court in *Ortiz v. Regan* found that because plaintiff had not been provided the opportunity to contest the administrative decision that resulted in the termination of his retirement benefits, plaintiff's right to procedural due process had been violated. *See Ortiz v. Regan*, 749 F. Supp. 1254, 1257 (S.D.N.Y. 1990)*.* In *Ortiz,* plaintiff, who had been receiving monthly advanced retirement benefits, stopped receiving payments for six months without any meaningful notice. *Id.* at 1259. The payments were later restored but at a reduced level, again without any notice. *Id.* Because she had not been provided with notice of the termination of benefits, nor an opportunity to contest the decision, it was held that plaintiff's procedural right to due process was violated. *Id.* at 1260; *see also Jackson*, 652 F. Supp. 2d at 343 ("Where the plaintiff alleges a deprivation pursuant to an established state procedure, 'the state can predict when it will occur and is in the position to provide a predeprivation hearing.' In such instances, 'the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.'") (quoting *Rivera–Powell v. N.Y.C. Bd. of Elections,* 470 F.3d 458, 465 (2d Cir. 2006)).

### 3. Substantive Due Process Claim

To allege a violation of substantive due process, plaintiff must claim: "(1) a 'valid property' interest or 'fundamental right'; and (2) that the defendant infringed on that right by conduct that 'shocks the conscience' or suggests a 'gross abuse of governmental authority.'" *Leder v. Am. Traffic Solutions, Inc.*, No. 14-CV-103, 2015 WL 332136, at *9 (E.D.N.Y. Jan. 24, 2015) (citing cases); *see also Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir. 1999)

("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'").

Pension benefits are property interests for purposes of due process claims. *See, e.g.*, *Ortiz*, 749 F. Supp. at 1258 ("There is little question that plaintiff's right to continued pension payments is a property right protected by the due process clause of the Fourteenth Amendment.") (citing *Russell v. Dunston*, 896 F.2d 664, 669 (2d Cir. 1990) (holding that state disability retirement benefits are a constitutionally protected property interest)).

Even where property interests are implicated, to succeed on a substantive due process claim, a plaintiff must show that the governmental conduct "transgress[es] the 'outer limit' of legitimate governmental action[.]" *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (citation omitted) (finding denial of a permit does not rise to the level of a substantive due process violation). It does not protect against government action that is merely "incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (finding inmate's prehearing confinement in administrative segregation did not deprive him of due process). Measures that are "unreasonably and arbitrarily instituted" may deprive individuals of their right to substantive due process. *Ahmed*, 7 F. Supp. 3d at 257.

In *Ahmed*, there were no indications that the retail store owned by plaintiffs had been properly designated as a "dangerous premises" by the Commissioner of the Department of Planning and Development of their town, a designation that forced plaintiffs to shut down their retail store without ever having had the opportunity to contest the Commissioner's determination. *Id.* at 250. The court held that plaintiffs had stated a plausible substantive due process claim. *Id.* at 253 ("[A]t the motion to dismiss stage, the Court must accept the

allegations of the complaint as true, and here plaintiffs have asserted in great detail that there were no code violations that would warrant the shutting down of the store. Those allegations, at this stage, are sufficient to state a property interest for purposes of a substantive due process claim.").

## B. Application

King's due process claim is construed as one brought pursuant to section 1983. *See King*, 595 F. App'x at 12 (categorizing King's due process claim as a section 1983 claim). Because, under present law, article 78 proceedings cannot grant the full amount of monetary relief afforded under section 1983 claims, King's section 1983 claim is not barred by *res judicata*. *See, e.g.*, *Vargas v. City of New York,* 377 F.3d 200, 205 (2d Cir. 2004) ("New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent section 1983 litigation."); *Brenes v. City of New York*, No. 07-5549-CV, 2009 WL 742163, at *2 (2d Cir. Mar. 23, 2009) (summary order) (same).

### 1. Equitable Tolling and Equitable Estoppel

The claim is not barred by the three-year statute of limitations. *See supra* Part VIII.A.1 (discussing cases). Equitable tolling is not applied in the instant action. *Id.* Equitable estoppel is, however, relevant, applying to denial of pension benefit cases where NYCERS fails to inform a pensioner of the right to challenge an adverse determination in an article 78 proceeding, and of the applicable four-month statute of limitations period. *Id.* Equitable estoppel applies in this case. *Id.*

Defendant's argument that *Bagedonow v. NYCERS* is dispositive of the issue in this case is unconvincing. *See* Hr'g Tr., July 27, 2015; *Bagedonow v. NYCERS*, No. 09-CV-9603, 2010 WL 2927436, at *3–4 (S.D.N.Y. July 16, 2010). In *Bagedonow*, plaintiffs "pre-selected a

pension plan that varied from [their] intended choice." *Id.* at *3. Mishandling of mail by the U.S. Postal Service resulted in plaintiffs not receiving notification from NYCERS confirming the plan selected. *Id.* at *1, 3. By the time plaintiffs realized the plan in effect was not the one sought, NYCERS informed them that once a "selected option 'was paid, there is no provision whereby it can be changed.'" *Id.* at *3. The court held that plaintiffs were not denied pension benefits because they had been given "the precise benefit plan" that they had selected. *Id.*

In the instant action, the basis of the suit is not plaintiff's own error in selecting a benefit plan different than the one he intended. Here, plaintiff followed NYCERS' directed procedures with respect to applying for Tier 1 benefits reinstatement. The problem now before the court was presented because NYCERS made a determination that retirement occurred on the "payability date." *See supra* Part V.D. (reproducing Decision Letter).

By failing to provide King with a hearing regarding the revocation of his Tier 1 benefits, it was incumbent on NYCERS to inform King of his right to appeal the administrative decision in an article 78 proceeding, and to inform him of the four-month statute of limitations. *See supra* Part VIII.A.1 (discussing cases). Having neglected to do so, it was only after the state court denied King's claim that he could ascertain that the postdeprivation hearing made available to him pursuant to article 78 would not suffice to cure the defect he complained of—*i.e.*, the denial of an evidentiary hearing regarding the revocation of his Tier 1 benefits. *Id.*; *see also* Compl. ¶ 16 ("NYCERS' action is unconstitutional because . . . [it] depriv[ed] King of Tier-1 pension entitlements without a hearing before an independent hearing officer where all evidence from both sides could have been fairly adjudicated prior to the deprivation"). As explained by plaintiff at the hearing in this court, an appeal of the article 78 complaint would have been fruitless considering the four-month statute of limitations applicable to all claims brought

pursuant to that article.  *See* Hr'g Tr., July 27, 2015; *see also supra* Part VI.A. (discussing article

78 proceeding).  While he could have pursued his breach of contract claim in a separate state

court action, he was entitled to bring that claim in federal court along with his section 1983

claim, the statute of limitations which began to run on January 23, 2012, the date that the state

court decision regarding King's article 78 claim was issued.  *See supra* Part VI.A.

### 2. Procedural Due Process Claim

The question is whether King was provided adequate process before his benefits were

suspended.  The answer is no.

Although NYCERS notified King that his monthly retirement benefits would be reduced,

he was not provided with an opportunity to contest NYCERS' decision prior to the reduction of

his benefits.  *See supra* Parts V.D (facts) & VIII.A.2 (law).  The revocation of King's Tier 1

benefits was done pursuant to established state procedures; it was neither random nor arbitrary.

Accordingly, it was incumbent on NYCERS to provide King with a predeprivation hearing.  *Id.*

The notice provided to King is equivalent to the absence of notice in *Ortiz*.  *See supra* Part

VIII.A.2 (law).  Like the plaintiff in *Ortiz*, King could not contest NYCERS' decision prior to

the termination of his benefits.  *Id.*  The availability of an article 78 proceeding did not absolve

NYCERS from providing King with an adequate predeprivation of benefits hearing.  *Id.*

Defendant's motion to dismiss King's procedural due process claim is denied.

### 3. Substantive Due Process Claim

Pensions play an integral role in how a government worker plans for the future.  *See*

Ricketts, *supra*.  When plaintiff began to actually receive Tier 1 payments he could be expected

to plan his life based on the expectation of continued payments.  NYCERS failed to identify the

statutory provisions on which it relied to conclude that King was ineligible for Tier 1

reinstatement, and to explain the formula it used to identify the "retirement date" that it

unilaterally imposed on him.  This, coupled with NYCERS' refusal to inform King that he had a right to contest the administrative ruling substantially reducing his pension benefits, amounted to pulling his economic blanket out from around him, a "gross abuse of governmental authority." *See supra* Part VIII.A.3.

A substantive due process claim has been established.  *Id.*

## IX.  Breach of Contract

### A.  Law

The New York Court of Appeals has emphasized that pension benefits are equivalent to contract payments:

> It is a substantial factor in entering the permanent Civil Service of the government, State or local, "career service" as some call it, that the employee can look forward to a pension or retirement allowance when his service is over.  That reward or benefit is part of the compensation which he accepts in lieu of the greater rewards of private employment.  The *membership* in a pension or retirement system *is, therefore*, substantially *a contractual relationship when the member joins the system.  The benefits which are the essence of that contract should not be diminished or impaired.*

*Lippman v. Bd. of Educ. of the Sewanhaka Cent. High Sch. Dist.*, 487 N.E.2d 897, 899 (1985) (citation omitted) (emphasis in original).

The New York statute of limitations for breach of contract is six years.  *See* N.Y. C.P.L.R. § 213(2); *see also Guilbert v. Garner*, 480 F.3d 140, 149–50 (2d Cir. 2007) (applying six-year statute of limitations to pension case where employer had contractual and continuing obligation to contribute annually to employee's pension plan).

A plaintiff may maintain a breach of contract cause of action apart from an article 78 claim.  *See McDarby v. Dinkins*, 907 F.2d 1334, 1338 n.3 (2d Cir. 1990) (acknowledging that a breach of contract cause of action may be brought apart from an article 78 claim); *Campo*, 843

F.2d at 103 n.7 (noting that plaintiff, in addition to article 78 review, had available to her a breach of contract claim against NYCERS when it revoked survivor benefits after three years of payment).

> [The New York Court of Appeals has] recognized that there are circumstances in which the same governmental action may constitute a violation of contract and also be of a character that would support a claim for article 78 relief. However, *the issues presented in a contract action differ significantly from those presented in an article 78 proceeding. When the damage allegedly sustained arises from a breach of the contract by a public official or governmental body, then the claim must be resolved through the application of traditional rules of contract law.* On the other hand, when a petitioner asserts that the determination of a governmental body or public official is in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion and seeks nullification of same, then an article 78 proceeding is the appropriate vehicle through which the claim may be addressed.
> . . .
>
> [W]here the language of the complaint asserts violations of a plaintiff's rights under a contract and the primary thrust of the allegations is in contract, a plenary action sounding in contract is the appropriate remedy.

*Abiele Constr. Inc. v. N.Y.C. School Constr. Auth.,* 689 N.E.2d 864, 866–67 (1997) (emphasis added) (citations omitted); *see also Sbarra v. Port Auth. of N.Y. & N.J.*, No. 10-CV-8580, 2011 WL 4344078, at *15 (S.D.N.Y. Sept. 9, 2011) (finding that breach of contract claim was appropriate cause of action to bring where plaintiffs alleged that their promised compensation was altered to their detriment); *cf. Licopoli v. Mineola Union Free Sch. Dist.,* No. 09-CV-3974, 2010 WL 4961667, at *12 (E.D.N.Y. Dec. 1, 2010) (granting motion to dismiss section 1983 claim on the basis that even if the school superintendent plaintiff had a protectable property interest in an annual merit increase provided for by contract, postdeprivation remedies including a state law contract claim and article 78 proceeding were adequate).

In order to establish a breach of contract claim under New York law, a plaintiff must adequately allege: "(1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citations omitted).

### B. Application

Plaintiff brought the breach of contract claim within six years of the revocation of his Tier 1 benefits by NYCERS. *See supra* Part IX.A (law). His Tier 1 benefits were revoked in a September 4, 2008 letter. *See supra* Part V.D (facts). The instant action was filed on August 22, 2013, approximately one year prior to the date when his breach of contract claim would have been barred. *See supra* Part VI.B (procedural history). Sufficient uncontradicted evidence has been provided to sustain the breach of contract claim.

The claim is not precluded by *res judicata*. The Court of Appeals for the Second Circuit has in effect held that the state court did not issue what could be construed as a decision on the merits. *See King*, 595 F. App'x at 11; *see also Cloverfield Realty of N.Y., Inc. v. Town of Wawayanda*, 572 F.3d 93, 96 (2d Cir. 2009) (ruling that "dismissal of a claim solely for lack of timeliness in a New York state court does not preclude the same claim from being brought in another jurisdiction with a longer statute of limitations, including a federal court exercising its federal question jurisdiction"). *But see Joseph v. Athanasopoulos*, 648 F.3d 58, 67 (2d Cir. 2011) (expressing doubt that the New York State Court of Appeals has ever "'squarely addressed' whether a New York court's judgment dismissing a case based on the expiration of a New York limitations period should have preclusive effect in another jurisdiction with a longer, unexpired limitations period").

The state court article 78 decision, the Court of Appeals for the Second Circuit has in effect found, was rendered only on statute of limitations grounds. *See King*, 595 F. App'x at 11. The decision on the merits consisted of the brisk statement by the article 78 judge:

> It is no moment that petitioner maintains in his petition that NYCERS breached its contract with him, violated certain fiduciary duties and committed fraud.
>
> *The Court has considered petitioner's remaining arguments and find them to be without merit.*

*See supra* Part VI.A (emphasis added). It unclear whether the article 78 court considered the contract claim brought before it. Given that the holding is less than explicit, it should not be given preclusive effect on the breach of contract issue. *See O'Connor v. G & R Packing Co.,* 423 N.E.2d 397, 400 (1981) (explaining that a "less than explicit holding in [a] prior action should not be given preclusive effect").

Satisfied are the uncontradicted *prima facie* elements to maintain a breach of contract cause of action: (1) the case law and the New York State Constitution establish that a contractual relationship existed between plaintiff and NYCERS, *see supra* Parts IV (pension scheme) & IX.A (law); (2) on the undisputed factual record before the court, plaintiff's performance under his pension contract was adequate, *see supra* Part V (facts) & Part IV (pension scheme); he was a New York City employee for some twenty years, *see* Hr'g Tr., July 27, 2015; (3) as discussed below, defendant breached its contractual relationship with King; and (4) his damages are clear: a differential of $1,000 per month in receipt of benefits under Tier 1 as opposed to Tier 4, *see supra* Part V.E (facts).

A breach occurred because NYCERS—after having deemed King eligible to receive Tier 1 benefits and paying him accordingly for a period of six months—cancelled his Tier 1 reinstatement unilaterally, considering him to have been retired as of November 16, 2000

without ever having received a retirement application from him. *See supra* Part V (facts).

Although defendant argues that for "vested members" retirement date and payability date are

synonymous, a plain reading of Chapter 646 of the Laws of 1999, read in conjunction with RSSL

section 604-c(d), suggests otherwise. *See* Hr'g Tr., July 27, 2015; *supra* Part IV (pension

scheme). Neither Chapter 646 of the Laws of 1999 nor RSSL section 604-c(d) bestow discretion

on NYCERS to determine the retirement dates of former employees. *See supra* Part IV (pension

scheme). Asked at the motion hearing to provide the court with statutory authority for the

proposition that "payability date" is identical to "retirement date," no such authority was

proffered. *See* Hr'g Tr., July 27, 2015; *see also supra* Part IV (pension scheme); Letter from

Teresita V. Magsino, Aug. 5, 2015 (with no applicable relevant statutory authority).

An independent breach of a fiduciary duty claim has not been clearly stated by plaintiff.

To the extent that plaintiff sought to bring an independent breach of fiduciary duty claim, it does

not stand independently. *See, e.g.*, *Grund v. Delaware Charter Guar. & Trust Co.*, 788 F. Supp.

2d 226, 249 (S.D.N.Y. 2011) ("a cause of action for breach of fiduciary duty that is merely

duplicative of a breach of contract claim cannot stand" (citation omitted)).

## X. New York General Business Law Section 349

### A. Law

General Business Law section 349 prohibits deceptive and misleading business practices.

It reads in relevant part:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
>    . . .
> (h) [A]ny person who has been injured by reason of any violation of this section may bring an action in his own name . . . to recover his actual damages . . . .

N.Y. Gen. Bus. Law § 349.  The statute "applies to virtually all economic activity . . . ."  *Wilner*

*v. Allstate Ins. Co.*, 71 A.D.3d 155, 160 (2d Dep't 2010).

Claims pursuant to GBL section 349 are governed by a three-year limitations period.  *See*

*Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451, 459 (S.D.N.Y. 2014); *Morelli v.*

*Weider Nutrition Grp., Inc.*, 275 A.D.2d 607, 608 (2000) ("Claims pursuant to General Business

Law § 349 are governed by the three-year limitation period set forth in CPLR 214(2)." (citing

cases)).  The limitations period begins to run from the time when the plaintiff was injured and

"'is not dependent upon any date when discovery of the alleged deceptive practice is said to

occur.'"  *Medical Herald Pub. Co., Inc. v. J.P. Morgan Chase Bank, N.A.*, No. 13-CV-6979,

2014 WL 6769755, at *4 (S.D.N.Y. Nov. 25, 2014) (citation omitted).

To state a claim, a plaintiff must allege that:  "(1) the act or practice was consumer-

oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was

injured as a result."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citation omitted);

*see also, e.g.*, *MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997)

(holding insurer's alleged breach of obligation to pay disability insurance benefits and its alleged

use of agent on two occasions to contact health care professionals in effort to interfere with

physician-patient relationship did not demonstrate national policy to terminate unprofitable

disability policies and, therefore, did not violate New York's statute prohibiting deceptive acts or

practices in conduct of any business, trade, or commerce).

The threshold requirement, that the act or practice be consumer-oriented, is met by

showing it was "likely to have a 'broader impact on consumers at large.'"  *Lane v. Fein, Such &*

*Crane, LLP*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2011) (quoting *Oswego Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (1995)) (finding consumers'

allegations that debt collector made false statements against them in state court complaint affected consumer alone and was not likely to have broader impact); *Medical Soc'y. of State of N.Y. v. Oxford Health Plans, Inc.*, 15 A.D.3d 206, 207 (1st Dep't 2005) (holding complaint did not state a claim because "defendants' acts and practices were directed at physicians, not consumers"). Consumers are "'those who purchase goods and services for personal, family or household use.'" *Benetech, Inc. v. Omni Fin. Grp., Inc.*, 984 N.Y.S.2d 186, 188 (3d Dep't 2014) (citation omitted) (citing cases) (upholding lower court's dismissal of plaintiff's claim, which failed to allege that competitor aimed deceptive conduct at consumers and not plaintiff); *see also State of N.Y. Workers' Comp. Bd. v. 26-28 Maple Avenue, Inc.*, 915 N.Y.S.2d 744, 746 (3d Dep't 2011) (finding that allegations describing private dispute limited to the methods used to sell insurance coverage to particular entity did not qualify as consumer-oriented); *Deneberg v. Rosen*, 897 N.Y.S.2d 391, 395–96 (1st Dep't 2010) (ruling that commodities trader's implementation of tax shelter scheme was not consumer-oriented transaction because it was "a private dispute among parties relating to advice that plaintiff received and his particular plan structure, rather than conduct affecting the consumer public at large" (citations omitted)).

The second prong of a GBL claim requires a plaintiff to show that the act complained of was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Spagnola*, 574 F.3d at 74 (citations omitted). Each plaintiff "must individually plead the disclosures he or she received were inadequate, misleading, or false, and that she was injured as a result of the insufficient or false disclosures." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (finding homeowner failed to allege specific disclosures that mortgage originator did or did not disclose, or that she had been injured as a result of mortgage originator's actions).

The third requirement, causation, requires that the act complained of be the proximate cause of the harm alleged.  *Id.* at 234–35.

## B. Application

Plaintiff's GBL section 349 claim fails.  *See supra* Part X.A (law).

The claim is not consumer-oriented.  *Id.*  Plaintiff's membership in NYCERS does not qualify as a consumer relationship "to purchase goods and services for personal, family or household use."  *Id.*  The harm alleged is only applicable to King's particular situation and does not have a broader impact on consumers at large.  *Id.*  Nor can plaintiff satisfy the requirement that this claim is distinct from his breach of contract claim.  *See, e.g.*, *Spagnola*, 574 F.3d at 74 ("Although a monetary loss is a sufficient injury to satisfy the requirement under [section] 349, that loss must be independent of the loss caused by the alleged breach of contract.").

Alternatively, the claim fails because it was brought two years after the three-year statute of limitations had elapsed.  The limitations period began to run on September 4, 2008, the date that plaintiff was informed that he would no longer be eligible for Tier 1 benefits.  *See supra* Parts V.D (facts) & X.A (law).  Having brought the claim well after September 4, 2011, King's GBL claim is time-barred.

The issues of (1) whether NYCERS engaged in conduct that could be characterized as misleading or (2) causation need not be reached.

The GBL claim is dismissed.

## XI. Conclusion

Judgment is granted for plaintiff.

The case is decided on the state contract claim under supplemental jurisdiction (28 U.S.C § 1367) rather than on the federal due process claim.  New York's constitutional and statutory patterns make the benefit application contractual rather than constitutional for purposes of this

decision. *See supra* Part III.B.1–2 (protections afforded to public pensions) & Part IV (pension scheme). Under the due process claim, plaintiff might be entitled to pain and suffering and other damages greatly exceeding his contract damages. To allow such damages, in addition to the loss of income under the contract claim, would unduly burden the city pension system. *See supra* Part I.A.

NYCERS is directed to compute the amount plaintiff would have received under Tier 1 and deduct the amount he actually received. Plaintiff is entitled to this amount as damages.

The parties have not briefed the issue of the amount of interest due. Interest is due under N.Y. CPLR section 5001(b). The matter of interest is respectfully referred to the magistrate judge for computation. Plaintiff is not entitled to any other damages. Costs and disbursements granted to plaintiff.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: August 10, 2015
      Brooklyn, New York